IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

ACM CCSC VI-A (CAYMAN) ASSET
COMPANY,

       Plaintiff,

       v.                                          CIV. NO.: 16-2394 (SCC)

CARLOS ENRIQUE ITURREGUI
MARGARIDA, ET AL.,

       Defendants.

**ORDER**

    This is an action for collection of monies and foreclosure
of mortgages. Plaintiff ACM CCSC VI-A (Cayman) Asset
Company ("ACM") moved for summary judgment alleging
that there are no controversies of material fact regarding the
loan documents signed by defendants and the amounts owed
to ACM. Docket No. 21. The request stands unopposed.

    Having reviewed the parties' pleadings and supporting
documentation, we find that summary judgment against

defendants is proper.

## I. Background

ACM sued defendants to collect certain amounts owed pursuant to two Commercial Loans executed between Westernbank Puerto Rico ("Westernbank") and Defendants. Docket No. 1. ACM moved for summary judgment, Docket No. 21. Rather than opposing the request, defendants sought to reach a settlement. Docket No. 23. Should the settlement efforts fail, defendants agreed to the entering of judgment. *Id*.

## II. Standard

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(If a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial," summary judgment is proper.) The court must examine the record in the light most favorable to the nonmovant and indulging all reasonable inferences in the nonmovant's favor. *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In its review of the record, the court must refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986)).

Finally, as this is a diversity case, the court is bound to apply Puerto Rico law to all substantive matters. *Vázquez-Filipetti v. Banco Popular*, 504 F.3d 43, 48 (1st Cir. 2007).

### III. Factual Findings

In accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations. *See*

Local Rule 56(e). The court has disregarded all conclusory allegations, speculation, and improbable inferences disguised as facts. *See Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir.2006); *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). The following factual findings are taken from the parties' Statements of Uncontested Material Facts, ("SUMF's"), and supporting documentation.

1. ACM is an exempt, for-profit corporation, organized and existing under the laws of the Cayman Islands. ACM's offices are registered in Walkers Corporate Limited, Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Island. *See*, Docket No. 21-1, ¶ 2, Unsworn Statement Under Penalty of Perjury of David W. Silverstein, Vice President and Senior Asset Manager at Capital Crossing Servicing Company, LLC, a service agent of ACM.

2. The defendant Carlos Enrique Iturregui Margarida ("Iturregui-Margarida"), is of legal age, single, and resident

of San Juan, Puerto Rico. Upon information and belief, Iturregui-Margarida has mailing and residential addresses at Condominio Palma Real, 2 Calle Madrid, Apartment 11-G, San Juan P.R. 00929; Condominio Palma Real, 2 Calle Madrid, Apartment 11-GH, San Juan P.R. 00929; and P.O. Box 29007, San Juan P.R. 00929. *See*, Dkt. 1, ¶ 2, Complaint; Dkt. 13, ¶ 2, Answer to Complaint.

3. The defendant Carmen Teresa Carlo Gorbea ("Carlo-Gorbea") is of legal age, single, and resident of San Juan, Puerto Rico. Upon information and belief, Carlo-Gorbea has mailing and residential addresses at Condominio Palma Real, 2 Calle Madrid, Apartment 11-G, San Juan P.R. 00929; Condominio Palma Real, 2 Calle Madrid, Apartment 11-GH, San Juan P.R. 00929; and P.O. Box 29007, San Juan P.R. 00929. *See*, Dkt. 1, ¶ 3, Complaint; Dkt. 13, ¶ 3, Answer to Complaint.[1]

4. On December 17, 2005, Defendants executed a

---

[1] Iturregui-Margarida and Carlo-Gorbea are hereinafter referred to, collectively, as "Defendants."

Commercial Loan Agreement, authenticated under affidavit number 2,126 of Notary Public Juan Carlos Ortega Torres, whereby Westernbank granted to the Defendants a commercial loan in the principal amount of SIX HUNDRED FIFTY THOUSAND DOLLARS ($650,000.00), with interest at a variable rate and maturity date on June 19, 2006 (the "Original Loan Agreement"). *See*, Docket Nos. 1-1 and 8-1, Original Loan Agreement and Certified Translation; and Docket No. 13, ¶¶ 7 and 8, Answer to Complaint.

5. On December 5, 2007, Westernbank and the Defendants executed an Addendum to the Loan Agreement, authenticated under affidavit number 9,254 of Notary Public Juan Carlos Ortega Torres, whereby (a) the principal amount of the Original Loan Agreement was amended to the amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00); and (b) the maturity date was extended to July 31, 2008 (the "First Amendment"). *See*, Docket Nos. 1-2 and 8-2, First Amendment, and Certified Translation; and Docket No. 13, ¶¶ 10 and 11, Answer to Complaint.

6. On December 18, 2008, Westernbank and the Defendants, executed a Commercial Loan Agreement authenticated under affidavit number 9,004 of Notary Public Esther Rebeca Luzón Colón, whereby Westernbank granted to the Defendants a loan in the principal amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) to refinance the Original Loan Agreement, as amended, with interest at an annual rate of 6.50% for the first twenty four (24) months and variable interest thereafter and maturity date on December 18, 2013 (the "Loan Agreement I"). *See*, Docket Nos. 1-3 and 8-3, Loan Agreement I, and Certified Translation; and Docket No. 13, ¶¶ 13 and 14, Answer to Complaint.

7. The amounts disbursed under the Loan Agreement I are evidenced by a Promissory Note issued by the Defendants on December 18, 2008, payable to Westernbank or its order, endorsed to BPPR, thereafter endorsed to ACM, in the principal amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), authenticated under affidavit number 9,005 of Notary Public Esther Rebeca Luzón Colón

(the "Promissory Note I"). *See*, Docket Nos. 1-4 and 8-4, Promissory Note I, and Certified Translation; and Docket No. 13, ¶¶ 15 and 16, Answer to Complaint.

8. On December 27, 2013, BPPR and the Defendants executed an Amendment to the Promissory Note I to extend the maturity date and restructure the Loan Agreement I (the "Amendment I-Promissory Note I"). *See*, Docket Nos. 1-5 and 8-5, Amendment I-Promissory Note I; and Certified Translation; and Docket No. 13, ¶¶ 17 and 18, Answer to Complaint.

9. On May 30, 2014, BPPR and the Defendants executed an Amendment to the Promissory Note I to extend the maturity date and restructure the Loan Agreement I (the "Amendment II-Promissory Note I"). *See*, Docket. Nos. 1-6 and 8-6, Amendment II-Promissory Note I and Certified Translation; and Docket No. 13, ¶¶ 19 and 20, Answer to Complaint.

10. On December 19, 2005, Westernbank and the Defendants executed a commercial loan in the principal

amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), with an annual interest rate of 6.00% and maturity date on January 1, 2013 (the "Loan Agreement II"), evidenced by a Promissory Note issued by Defendants on December 19, 2005, payable to Westernbank or its order, endorsed to BPPR, thereafter endorsed to ACM, in the principal amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), authenticated under affidavit number 2,127 of Notary Public Juan Carlos Ortega Torres (the "Promissory Note II"). *See*, Docket Nos. 1-7 and 8-7, Promissory Note II and Certified Translation; and Docket No. 13, ¶¶ 22, 23 and 24, Answer to Complaint.

11. On January 11, 2013, BPPR and the Defendants executed an Amendment to the Promissory Note II to extend the maturity date and restructure the Loan Agreement II (the "Amendment I-Promissory Note II"). *See*, Docket Nos. 1-8 and 8-8, Amendment I-Promissory Note II and Certified Translation; and Docket No. 13, ¶¶ 25 and 26, Answer to Complaint.

12. On July 3, 2013, BPPR and the Defendants executed an Amendment to the Promissory Note II to extend the maturity date and restructure the Loan Agreement II (the "Amendment II-Promissory Note II"). *See*, Docket Nos. 1-9 and 9-9, Amendment II-Promissory Note II, and Certified Translation; and Docket No. 13, ¶¶ 27 and 28, Answer to Complaint.

13. On December 27, 2013, BPPR and the Defendants executed an Amendment to the Promissory Note II to extend the maturity date and restructure the Loan Agreement II (the "Amendment III-Promissory Note II"). *See*, Docket Nos. 1-10 and 8-10, Amendment III-Promissory Note II and Certified Translation; and Docket No. 13, ¶¶ 29 and 30, Answer to Complaint.

14. On May 30, 2014, BPPR and the Defendants executed an Amendment to the Promissory Note II to extend the maturity date and restructure the Loan Agreement II (the "Amendment IV-Promissory Note II"). *See*, Docket Nos. 1-11 and 8-11, Amendment IV-Promissory Note II and Certified

Translation; and Docket No. 13, ¶¶ 31 and 32, Answer to Complaint.

15. The Loan Agreements I and II are guaranteed by, among others, the following mortgage notes:

(i) Mortgage note executed by the Defendants on December 17, 2005, payable to Westernbank, or to its order, endorsed to BPPR, thereafter endorsed to ACM, for the principal amount of $650,000.00 authenticated under affidavit number 2,124 of Notary Public Juan Carlos Ortega Torres (the "Mortgage Note I"). *See*, Docket No. 1-12, Mortgage Note I; and Docket No. 13, ¶¶ 34 (i) and 35, Answer to Complaint.

(ii) The Mortgage Note I is guaranteed by a mortgage constituted through Deed Number 1037 executed in San Juan, Puerto Rico on December 17, 2005 before Notary Public Juan Carlos OrtegaTorres, recorded at: (a) page 11 of volume 1131, property number 21,608 of Santurce Norte, Registry of Property of San Juan, First Section; and (b) page 13 of volume 1131, property number 21,609 of Santurce Norte, Registry of Property of San Juan, First Section (the "Mortgage I"). *See*, Docket No. 1-13; and Docket No. 13, ¶¶ 34(i) and 36, Answer to Complaint.

(iii) Mortgage I was modified through Deed of Modification Number 292, executed in Mayaguez, Puerto

Rico on December 18, 2008 before Notary Public Esther Rebeca Luzón Colón, recorded in virtue of Act No. 216 of December 27, 2010 in properties number 21,608 and 21,609, respectively (the "Modification I"). *See*, Docket No. 1-14, Modification I; and Docket No. 13, ¶¶ 34(i) and 37, Answer to Complaint.

(iv) Mortgage note executed by the Defendants on December 19, 2005, payable to Westernbank, or to its order, thereafter endorsed to BPPR, thereafter endorsed to ACM, for the principal amount of $400,000.00 authenticated under affidavit number 2,128 of Notary Public Juan Carlos Ortega Torres (the "Mortgage Note II"). *See*, Docket No. 1-15, Mortgage Note II; and Docket No. 13, ¶¶ 34(ii) and 38, Answer to Complaint.

(v) The Mortgage Note II is guaranteed by a mortgage constituted through Deed Number 1038 executed in San Juan, Puerto Rico on December 19, 2005 before Notary Public Juan Carlos Ortega Torres, recorded at: (a) page 11 of volume 1131, property number 21,608 of Santurce Norte, Registry of Property of San Juan, First Section; and (b) page 13 of volume 1131, property number 21,609 of Santurce Norte, Registry of Property of San Juan, First Section (the "Mortgage II"). *See*, Docket No. 1-16, Mortgage II; and Docket No. 13, ¶¶ 34(ii) and 39, Answer to Complaint.

16. ACM is at the present the owner and holder of the Mortgage Notes I and II, the Promissory Notes I and II, as amended, as well as all of the security for the Loan Agreements I and II. *See*, Docket No. 21-2 ¶ 3, Sworn Statement Under Penalty of Perjury of David W. Silverstein, Vice President and Senior Asset Manager at Capital Crossing Servicing Company, LLC, a service agent of ACM.

17.     Mortgage Notes I and II, through Mortgages I and II, respectively, encumber the following properties (the "Properties"), described as follows:

**(i) Property I:**

URBAN: APARTMENT 11-G: Apartment located in the Northeast side of wing Northwest in the eleventh floor of the residential section of Palma Real Condominium, located between Ponce de Leon and Baldorioty de Castro Avenues, and Madrid and Ensenada streets, in Miramar, San Juan, Puerto Rico. Have a surface area of 1,497 square feet, equivalent to 139.0 square meters. Bounded by the Northwest, with apartment 11-H and northwest backyard of the building, by the Northeast, with recreational backyard of the building located in north side of the building, by the East, with apartment 11-J and the north

stairs (number 3) of the building, by the Southwest, with apartment 11-H and the main hall of the northwest side, through which it has entrance to the apartment, connected this hall with the main corridor of that floor where are the elevators and the stairs of the building that connect to the another floors of the building and the principal entrance of that residential section that give exit to Madrid Street.

This apartment contains, entrance vestibule with closet with an area of 74 square feet, equivalent to 6.9 square meters, living-dining room with 423 square feet, equivalent to 39.3 square meters, balcony with 102 square feet, equivalent to 9.5 square meters, kitchen with 108 square feet, equivalent to 10.0 square meters, interior hall with 75 square feet, equivalent to 6.9 square meters, bedroom number 1 with 146 square feet, equivalent to 13.6 square meters, closet in this room with 12 square feet, equivalent to 1.1 square meters, bedroom number 2 with 146 square feet, equivalent to 13.6 square meters, closet in this room with 12 square feet, equivalent to 1.1 square meters, bathroom with 44 square feet, equivalent to 4.1 square meters, principal bedroom with 261 square feet, equivalent to 24.2 square meters, closet in this bedroom with 42 square feet, equivalent to 3.9 square meters, bathroom in this room with 52 square feet, equivalent to 4.8 square meters.

Have a parking area in the basement of the building

identified with number 11-G. Correspond a participation in the Common elements of 0.789% and the total value of the building 0.558%.

The property described above is recorded at page 83 of volume 604 of Santurce Norte, property number 21,609 Registry of Property San Juan, First Section. *See*, Docket No. 21- 3, Sworn Property Title Report of Property I; and Docket No. 13, ¶ 42(i), Answer to Complaint.

### (ii) Property II:

URBAN: APARTMENT 11-H: Apartment located in the Northwest side in the eleventh floor of the residential section of Palma Real Condominium, located between Ponce de Leon and Baldorioty de Castro Avenues, and Madrid and Ensenada streets, in Miramar, San Juan, Puerto Rico. Having a surface area of 1,472 square feet, equivalent to 136.7 square meters. Bounded by the Northwest, with northwest backyard, by the Northeast, with, recreational backyard of the building located in the north of the building, with apartment 11-G and central hall to the northwest side, by the Southwest, with yard of the building that give access to the Ensenada Street, by the Southeast, with apartment 11-G, the apartment 11-F and with the central hall of the northeast side, through have entrance the apartment, connected this hall with the main corridor of that floor where are the elevator and the stairs

of the building that connect to the another floors of the building and the principal entrance of that residential section that give exit to Madrid Street.

This apartment contains, entrance vestibule with closet with an area of 117 square feet, equivalent to 10.9 square meters, living-dining room with 406 square feet, equivalent to 37.7 square meters, balcony with 96 square feet, equivalent to 8.9 square meters, kitchen with 101 square feet, equivalent to 9.4 square meters, interior hall with 75 square feet, equivalent to 6.9 square meters, closet in the hall with 10 square feet, equivalent to 0.9 square meters, bedroom number 1 with 147 square feet, equivalent to 13.7 square meters, closet in this room with 12 square feet, equivalent to 1.2 square meters, bedroom number 2 with 145 square feet, equivalent to 13.4 square meters, closet in this room with 12 square feet, equivalent to 1.2 square meters, bathroom with 43 square feet, equivalent to 4.0 square meters, principal bedroom with 212 square feet, equivalent to 19.7 square meters, closet in this bedroom with 40 square feet, equivalent to 3.7 square meters, bathroom in this room with 53 square feet, equivalent to 4.9 square meters.

Having a parking area in the basement of the building identified with number 11-H. Correspond a participation in the Common elements of 0.806% and the total value of the building 0.570%.

The property described above is recorded at page 173 of volume 604 of Santurce Norte, property number 21,608 Registry of Property San Juan, First Section. *See*, Exhibit 4, Sworn Property Title Report of Property II; and Docket No. 13, ¶ 42(i), Answer to Complaint.

18. The Mortgage I, as amended, is duly registered at: (a) page 13 of volume 1131, property number 21,609 of Santurce Norte (Property I), Registry of Property of San Juan, First Section; and (b) page 11 of volume 1131, property number 21,608 of Santurce Norte (Property II), Registry of Property of San Juan, First Section. *See*, Exhibits 3 and 4, Sworn Property Title Report of Properties I and II; Docket No. 13, ¶ 45, Answer to Complaint.

19. Pursuant to the Mortgage I, it was agreed that the amount of $325,000.00 would serve as the initial bidding amount for Property I (in Spanish, "tipo mínimo"). *See*, Docket No. 1, ¶ 46 ; Docket No. 13, ¶ 46, Answer to Complaint.

20. Pursuant to the Mortgage I, it was agreed that the amount of $325,000.00 would serve as the initial bidding

amount for Property II (in Spanish, "tipo mínimo"). *See*, Docket No. 1, ¶ 47 ; Docket No. 13, ¶ 47, Answer to Complaint.

21. The Mortgage II is duly registered at: (a) page 13 of volume 1131, property number 21,609 of Santurce Norte (Property I), Registry of Property of San Juan, First Section; and (b) page 11 of volume 1131 of Santurce Norte (Property II), Registry of Property of San Juan, First Section. *See*, Exhibits 3 and 4, Sworn Property Title Report of Properties I and II; Docket No. 13, ¶ 48, Answer to Complaint.

22. Pursuant to the Mortgage II, it was agreed that the amount of $200,000.00 would serve as the initial bidding amount for Property I (in Spanish, "tipo mínimo"). *See*, Docket No. 1, ¶ 49; Docket No. 13, ¶ 49, Answer to Complaint.

23. Pursuant to the Mortgage II, it was agreed that the amount of $200,000.00 would serve as the initial bidding amount for Property II (in Spanish, "tipo mínimo"). *See*, Docket No. 1, ¶ 50; Docket No. 13, ¶ 50, Answer to Complaint.

24. ACM acquired the commercial loan agreements (described below), with all their related collateral document

on June 17, 2016 from Banco Popular de Puerto Rico ("BPPR") who, in turn, had acquired the credit facilities from Westernbank Puerto Rico ("Westernbank") after the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ordered the closure of Westernbank and the sale of its assets on April 30, 2010, through the appointed receiver the Federal Deposit Insurance Corporation ("FDIC"). *See*, Docket No. 21-1 ¶ 3, Unsworn Statement Under Penalty of Perjury of David W. Silverstein.

25. Defendants are the owners of the Properties according to the Registry of Property and ACM's best knowledge and belief. *See*, Docket Nos. 21-4 and 21-5, Sworn Property Title Report of Properties I and II.

26. On December 18, 2008, Defendants and Westernbank executed a Pledge Agreement, authenticated under affidavit number 9,003 of Notary Public Esther Rebeca Luzón Colón (the "Pledge Agreement I"), whereby the Defendants delivered to Westernbank, now ACM, as pledge the Mortgage Note I. *See*, Docket No. 1-17, Pledge Agreement I; Docket No.

8-17.

27. Defendants have breached their obligations under the Loan Agreements I and II as well as under the other loan documents towards ACM by failing to make the agreed upon payments. *See*, Docket No. 21-2, ¶¶ 8, 9, 10, 11, Unsworn Statement Under Penalty of Perjury of David W. Silverstein; Docket No. 1, ¶ 54; Docket No. 13, ¶ 54.

28. As of January 5, 2017, the Defendants owe ACM under the Loan Agreement I the amount of $333,851.22 in principal; interests in the amount of $37,994.11 which continues to accrue until full payment of the debt at $44.05 per diem; default interests in the amount of $13,893.95 which continues to accrue until full payment of the debt at $18.55 per diem; late charges in the amount of $301.51 which continues to accrue until full payment; and any other advance, charge, fee or disbursements made by ACM, on behalf of the Defendants, in accordance with the Loan Agreement I, as well as under the other loan documents, plus costs and agreed attorney's fees under the Mortgage Note I in the amount of $65,000.00. *See*,

Docket No. 21-2, ¶ 9, Unsworn Statement Under Penalty of
Perjury of David W. Silverstein, and Docket No. 21-6, Payoff
Balances of loans as of January 5, 2017.

29. As of January 5, 2017, the Defendants owe ACM under
the Loan Agreement II the amount of $342,268.91 in principal;
interests in the amount of $45,407.67 which continues to
accrue until full payment of the debt at $57.04 per diem;
default interests in the amount of $14,569.32 which continues
to accrue until full payment of the debt at $19.02 per diem;
late fees and any other advance, charge, fee or disbursements
made by ACM, on behalf of the Defendants, in accordance
with the Loan Agreement II, as well as under the other loan
documents, plus costs and agreed attorney's fees under the
Mortgage Note II in the amount of $40,000.00. *See*, Docket No.
21-2, ¶ 10, Unsworn Statement Under Penalty of Perjury of
David W. Silverstein; and Docket No. 21-6, Payoff Balances of
loans as of January 5, 2017.

30. On June 24, 2016 and July 7, 2016, ACM sent Notices of
Default to Defendants, informing their failure to comply with

their payments as agreed in upon in the Loan Agreements I and II, and to inform that said Loan Agreements had matured and expired. Therefore, ACM declared that all the obligations under the Loan Agreements I and II, were immediately and automatically due and payable in full. *See*, Docket No. 1, Exhibits 18 and 19 of Complaint, Docket Nos. 1-18 and 1-19, Notice of Default; and Docket No. 13, ¶ 57, Answer to Complaint.

31. The Defendants have not cured the default detailed above. *See*, Docket No. 21-1 ¶ 11, Unsworn Statement Under Penalty of Perjury of David W. Silverstein.

32. Defendants are not active in military service. *See*, Dkt. 1, ¶ 4, Complaint; Docket No. 13, ¶ 4, Answer to Complaint.

**IV. Analysis**

Given the uncontested facts listed above, it is evident that no dispute of material fact exists as to defendants' indebtedness. The parties entered into two binding loan agreements pursuant to Article 1631 of the Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 4511. Plaintiff has attached all

the necessary documentation to establish that it is the secured party of record for the Loan Agreements. Plaintiff has also established that defendants failed to make payment as agreed upon in the loan documents. As a result, ACM notified defendants through a Notice of Default of their failure to comply with their monthly payments. As of January 5, 2017, defendants, jointly and severally, owe ACM a total of $442,245.90 (principal, interest, default interest and legal expenses), under Loan Agreement I, and $451,040.79 (principal, interest, default interest and legal expenses) under Loan Agreement II. There is no evidence on the record that defendants have made payments after that date or have cured the default.

In view of the record before us, plaintiff is entitled to receive from defendants the payment of the amounts owed, and is entitled to foreclose on Properties I and II. In the absence of full payment, plaintiff has the right to execute all the collateral that secures defendants' outstanding debt.

**V. Conclusion**

Because I find that plaintiff has successfully established defendants are in default of their loan obligations, I grant summary judgment in favor of plaintiff and order defendants to pay the amount of $442,245.90 under Loan Agreement I, and $451,040.79 under Loan Agreement II, plus interests that may have accrued since January 5, 2017.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of July, 2017.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE